UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

KEITH BOOTH,

    Plaintiff,

v.

COUNTY EXECUTIVE, ISIAH LEGGETT, MONTGOMERY COUNTY, MARYLAND, DEPARTMENT OF HEALTH AND HUMAN SERVICES and
DALE SCHACHERER,

    Defendants.

Civil Action No. TDC-15-2231

## MEMORANDUM OPINION

Plaintiff Keith Booth filed suit against Defendants Montgomery County Executive, Isiah Leggett; Montgomery County, Maryland (the "County"); Montgomery County Department of Health and Human Services (the "Department" or "DHHS"), and Dale Schacherer (collectively, "Defendants"), alleging employment discrimination, hostile work environment, retaliation, and intentional infliction of emotional distress. Pending before the Court is Defendants' Motion to Dismiss. The Motion is fully briefed and ripe for disposition. No hearing is necessary to resolve the issues. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion is GRANTED.

### BACKGROUND

The following facts are presented in the light most favorable to Booth, the nonmoving party:

I.      **Alleged Discrimination and Retaliation**

Booth, who is African American, has been a social worker for the Department since 2006. Until August 20, 2014, Schacherer served as Booth's supervisor. In May 2008, Booth complained first to the DHHS Director of Communicable Disease and Epidemiology that Schacherer had not provided Booth with an annual evaluation and had refused to sign a form that Booth needed for his social worker's license, then reported to the Montgomery County Equal Employment Opportunity Office ("EEO Office") that he believed he faced bias and prejudice at work. Schacherer responded with "increasing hostility and discriminatory practices." Compl. ¶ 21. Booth again contacted the EEO Office with his concerns. He also emailed the DHHS Director to complain about Schacherer's "continuing refusal to grant him an annual evaluation and the environment of fear of vindication and retaliation created by his superiors." Id. ¶ 22. Schacherer responded by ignoring Booth, refusing to give him assignments, and telling employees to stay away from Booth.

On October 14, 2008, Booth sent an email and left a voice message informing Schacherer that Booth would miss the following day of work because he had been selected for jury duty. When Booth returned to the office on October 16, 2008, Schacherer told him that he would not be paid for the missed day of work. The Department then attempted to suspend Booth for three days without pay, but Booth filed a successful union grievance which resulted in the suspension being overturned before it went into effect. Following Booth's successful grievance, Schacherer "became more hostile, retaliatory and discriminatory towards Booth." Id. ¶ 40. During this period Booth "began to suffer from anxiety, irregular heartbeats, heart racing, insomnia,

headaches and body pain related to the hostile work environment created by his supervisors." *Id.* ¶ 36. He contacted a physician on two occasions to discuss his symptoms.

Booth alleges that Schacherer's behavior continued for six years following Booth's successful grievance, though the Complaint describes no specific incidents between 2009 and 2013. In March 2014, Schacherer resisted providing Booth with an individual supervision session required by the Maryland Board of Social Work Examiners, though he eventually relented. He also initially refused, but ultimately agreed, to sign forms Booth needed to submit to the Board of Social Work Examiners. Schacherer, however, made mistakes on the form, "thereby impeding and hindering Booth's opportunity to submit his application in a timely manner." *Id.* ¶ 45. Schacherer also had a "habit of using every opportunity to humiliate and make fun of Booth in the presence of his colleagues" and of "ignoring, isolating and not speaking to Booth directly on work related issues." *Id.* ¶¶ 47-48. During two meetings in 2014, Schacherer "talked down at Booth in a calculated effort to disgrace and humiliate him before his colleagues." *Id.* ¶ 46. After Schacherer was promoted in August of 2014, his successor continued to harass Booth at Schacherer's behest.

## II.   Procedural History

On or about April 20, 2015, Booth filed a charge of discrimination, harassment, retaliation, and intentional infliction of emotional distress ("IIED") with the United States Equal Employment Opportunity Commission ("EEOC"). On April 30, 2015, the EEOC issued Booth a right-to-sue letter. On July 15, 2015, Booth provided the County with notice of his intent to sue Leggett as required by the Local Government Tort Claims Act, Md. Code Ann., Cts. & Jud. Proc. § 5-304 (2013). On July 29, 2015, Booth filed a four-count complaint, alleging disparate treatment, hostile work environment, and retaliation under Title VII of the Civil Rights Act of

1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17 (2012), and intentional infliction of emotional distress. On September 1, 2015, Defendants filed a Motion to Dismiss. On October 12, 2015, Booth filed a Response to the Motion. On October 26, 2015, Defendants filed a Reply.

## DISCUSSION

Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) based on their arguments that (1) the Department and Leggett are not proper defendants; (2) Booth's claims are time-barred; and (3) Booth has failed to state a claim upon which relief can be granted in any of the counts. For the reasons set forth below, the Motion is granted.

### I. Legal Standard

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

### II. Proper Defendants

Booth asserts Title VII claims against the County, the Department, and Leggett in his official capacity as County Executive, and asserts the IIED claim against all Defendants based on Schacherer's conduct. The Department is a subdivision of the County, not a legally distinct entity, and thus not subject to suit. *See Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 874 (4th Cir. 1989) (dismissing claim against a sheriff's office because it was not a legal entity separate

4

from the Sheriff and the county government); *Tepeyac v. Montgomery Cty.*, 779 F. Supp. 2d 456, 461 (D. Md. 2011) (dismissing claims against the DHHS because it is not "a separate, legally cognizable unit capable of being sued").

Booth cannot sue Leggett under Title VII because the statute only creates a cause of action against employers, not individual supervisors. 42 U.S.C. § 2000e-2(a); *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180-81 (4th Cir. 1998). Moreover, a suit against Leggett in his official capacity is duplicative of the suit against the County. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (stating that suits against government officials in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent") (quoting *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)); *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) (dismissing a 42 U.S.C. § 1983 claim against a school superintendent as duplicative of a claim against the school board); *Johnson v. North Carolina*, 905 F. Supp. 2d 712, 721 (W.D.N.C. 2012) (dismissing a Title VII official-capacity claim against the plaintiff's supervisor as duplicative of the claim against the plaintiff's employer). Consequently, Booth's claims against the Department and Leggett are dismissed.

### III.   Title VII Claims

#### A.   Limitations Period

Before filing suit under Title VII, a plaintiff must first file a charge with the EEOC or a "State or local agency with the authority to grant or seek relief" from the discriminatory practice. 42 U.S.C. § 2000e-5(e)(1). A charge filed with a state or local agency must be submitted within 300 days of the unlawful employment practice. *Id.* The plaintiff cannot recover "for discrete acts of discrimination or retaliation" that occurred outside of the 300-day limitations period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). Booth's Complaint describes

conduct dating back to 2008. Defendants correctly argue that Booth may not pursue any discrete claims arising more than 300 days before April 20, 2015, the date that Booth filed a charge of discrimination with the EEOC. Consequently, Booth may not pursue claims based on discrete acts of discrimination or retaliation occurring before June 24, 2014, such as the alleged proposed suspension of Booth in 2008. However, evidence of events occurring before that date may be admissible to provide context for understanding the import of later actionable conduct. *Morgan*, 536 U.S. at 112-13.

By contrast, hostile work environment claims often arise from repeated conduct that may occur over "a series of days or perhaps years." *Id.* at 115. A court thus may consider a hostile work environment claim "so long as an act contributing to that hostile work environment takes place" within 300 days of the filing of the charge. *Id.* at 105; *see also Gilliam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134, 139-41 (4th Cir. 2007). Here, Booth asserts that Schacherer harassed Booth repeatedly until Schacherer's promotion on August 20, 2014 and continued to do so vicariously through his successor. Because Booth alleges acts contributing to a hostile work environment that occurred within the limitations period, the Court may consider the claim, including evidence of incidents of harassment occurring before June 24, 2014. *Morgan*, 536 U.S. at 117, 120.

The facts underlying Booth's retaliation claim overlap substantially with those he relies upon for his hostile work environment claim. Thus, to the extent that Booth alleges that Schacherer engaged in retaliatory harassment resulting in a hostile work environment, the Court may consider such a claim, including any retaliatory conduct contributing to the hostile work environment, regardless of whether it occurred outside the limitations period. *Cf. id.* at 105 (holding that only "discrete acts of . . . retaliation" must occur within the limitations period to be

actionable); *Von Gunten v. Maryland*, 243 F.3d 858, 865-66, 869-70 (4th Cir. 2001) (recognizing a hostile work environment claim under Title VII for retaliatory harassment), *abrogated on other grounds by Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

## B. Disparate Treatment

Although it is not clear from the Complaint, Booth's Response to the Motion to Dismiss indicates that he is alleging race and gender discrimination. Because Booth does not allege direct evidence of discrimination, he must show that (1) he is a member of a protected class; (2) his job performance was satisfactory; (3) he suffered an adverse employment action; and (4) he was treated differently from similarly situated employees outside the protected class. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). Booth fails to plead sufficient facts regarding the third and fourth elements of this claim.

"An adverse employment action is a discriminatory act that 'adversely affects the terms, conditions, or benefits of the plaintiff's employment.'" *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)). Typical examples of adverse employment actions include "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999).

Booth fails to allege a specific adverse action within the limitations period. Booth alleges that Schacherer delayed signing a form that Booth needed, but he does not identify any harm stemming from the delay. *See Holland*, 487 F.3d at 219 (holding that a job reassignment was not an adverse employment action when the plaintiff failed to show that it reduced his compensation or otherwise had an adverse impact). Booth's claims that Schacherer humiliated him in two meetings, made jokes about him, and isolated him from other employees, while alleging mean-

spirited behavior, do not assert an adverse employment action. *See Cepada v. Bd. of Educ. of Baltimore Cty.*, 814 F. Supp. 2d 500, 515 (D. Md. 2011) (holding that being "yelled at" and "criticized" did not constitute an adverse employment action under the more lenient standard for such actions applied to Title VII retaliation claims); *Blount v. Dep't of Health & Human Servs.*, 400 F. Supp. 2d 838, 842 (D. Md. 2004) (holding that "disparaging remarks made by a supervisor," including statements alleged to have embarrassed the employee in front of co-workers, "do not state an adverse employment action").

Booth also fails to allege facts sufficient to create a plausible inference that he was treated differently from similarly situated co-workers based on his race or gender. An inference of race or gender discrimination could be based on a comparison to the treatment of similarly situated co-workers of different races or genders, if those colleagues were treated more favorably under similar circumstances. *See Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008). Booth alleges that Schacherer treated "Booth's colleagues with respect and dignity" while endeavoring to humiliate Booth, Compl. ¶ 54, but he does not identify the race or gender of his co-workers.

Booth alleges that a co-worker, Gillian Blackman-Diarra, was "similarly situated" to Booth for purposes of his 2008 proposed suspension because she failed to post on the office calendar a notice of her absence on a particular day, but no "investigation" into her absence was mounted. Compl. ¶ 53. The Complaint, however, does not identify Blackman-Diarra's race, her job title or responsibilities, or her supervisor, nor does it offer any details about her alleged absence. Because two co-workers treated differently for the same offense might not be similarly situated if they have different job responsibilities or circumstances, a complaint that merely alleges a co-worker is similarly situated without providing facts to substantiate that similarity

8

fails to state a claim for discrimination. *See Coleman*, 626 F.3d at 190-91 (affirming dismissal of a Title VII discrimination claim where the complaint named a comparator but did not allege facts establishing that the comparator was similarly situated); *see also Lightner*, 545 F.3d at 265 (holding that the plaintiff, a police officer responsible for the department's compliance with ethics rules, was not similarly situated to a fellow officer who had committed the same offense but had no role in enforcing ethics rules). In any event, Booth cannot pursue a disparate treatment claim based on the 2008 proposed suspension because that incident falls outside the limitations period.

Where Booth has not alleged comparator evidence from which one could infer that his mistreatment was because he is an African American male, and he has actually alleged a plausible alternative explanation, that some of his mistreatment was in retaliation for a successful union grievance, he has not stated a plausible claim of disparate treatment based on race or gender discrimination.

### C. Hostile Work Environment

Booth further claims that the County subjected him to a hostile work environment on the basis of race in violation of Title VII. To state a hostile work environment claim, a plaintiff must allege offending behavior that was (1) unwelcome, (2) based on race, (3) "sufficiently severe or pervasive to alter the conditions of her employment and create an abusive atmosphere," and (4) imputable to the employer. *Walker v. Mod-U-Kraf Homes, LLC*, 775 F.3d 202, 207-08 (4th Cir. 2014) (quoting *EEOC v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009)). As with the disparate treatment claim, Booth has failed to allege facts that would suggest that Schacherer's conduct was motivated by racial animus. In fact, the Complaint makes only one explicit reference to race, a statement that Booth is African American. The Complaint repeatedly

articulates Booth's belief that Schacherer was harassing him. However, even if Schacherer "disliked [Booth] and made [his] job more stressful as a result, that fact, absent some independent evidence of racial animosity, is not sufficient to establish a prima facie claim" of a racially hostile work environment. *Gilliam*, 474 F.3d at 143.

Moreover, Booth has not alleged facts to support a finding that Schacherer's conduct was sufficiently severe or pervasive to create a hostile work environment actionable under Title VII. A racially hostile work environment is one that is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Boyer-Liberto v. Fontainebleu Corp.*, 786 F.3d 264, 277 (4th Cir. 2015). Among the relevant considerations are whether there was any "physically threatening or humiliating" race-based conduct in the workplace. *Id.* Booth claims that Schacherer shirked his duties as Booth's supervisor and embarrassed Booth in front of his co-workers. But Booth makes no allegations of intimidation or threats. He does not claim that Schacherer used racial epithets or racially derogatory language. *See id.* at 277-78 (finding that a single incident involving an "extremely serious" racial epithet could establish a racially hostile work environment). Taken as a whole, the Complaint does not plausibly allege that Booth was a victim of severe or pervasive racial harassment sufficient to establish a hostile work environment.

### D. Retaliation

Booth claims that, after he succeeded in having his suspension overturned in late 2008, Schacherer mounted a six-year campaign of retaliation. To state a claim for retaliation under Title VII, the plaintiff must show (1) engagement in a protected activity; (2) an adverse employment action; (3) and a causal link between the protected activity and employment action.

*Coleman*, 626 F.3d at 190. Booth has failed to allege either that he engaged in protected activity or that he suffered an adverse employment action.

An employee engages in a protected activity by opposing discriminatory employment practices. Opposition activities include not only filing a formal discrimination complaint, but also "utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). To qualify as protected activity, the employment practices opposed must be either "actually unlawful under Title VII" or reasonably believed by the employee to be unlawful. *Boyer-Liberto*, 786 F.3d at 282.

Booth argues that his union grievance of his proposed suspension for missing work to fulfill jury duty was a protected activity. But he provides no facts to suggest that the County sought to suspend Booth because of his race or gender. The Complaint asserts that Schacherer's retaliation stems from Booth's union grievance and his "act of inquiring about policies, raising the issue of lack of annual evaluations and other concerns," not complaining about race or gender discrimination. Compl. ¶ 35. Thus, although Booth opposed an employment practice, he does not allege that he opposed an employment practice unlawful under Title VII. *See Lightner*, 545 F3d at 263-64 (noting that Title VII bars discrimination based on race, color, religion, sex or national origin and does not protect against mistreatment of whistleblowers or other forms of wrongful discharge).

In addition, as with the disparate treatment claim, Booth does not identify retaliatory conduct that amounts to a materially adverse employment action, which in the context of a retaliation claim is one which "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548

U.S. 53, 67-68 (2006) (internal quotation marks omitted). Booth does not allege that he was suspended, demoted, formally reprimanded, or even given a lower performance evaluation. Rather, he complains that Schacherer delayed supervision sessions, did not timely sign off on necessary forms, and verbally embarrassed him in front of co-workers. These activities, without more, do not constitute a retaliatory adverse employment action under Title VII. *See Adams v. Anne Arundel Cty. Pub. Schs.*, 789 F.3d 422, 425, 431 (4th Cir. 2015) (stating that a supervisor berating the plaintiff in front of colleagues did not establish an adverse employment action for purposes of a Title VII retaliation claim); *Cepada*, 814 F. Supp. 2d at 515 (stating that being subjected to yelling and criticism by a supervisor was not a retaliatory adverse employment action). Booth has thus failed to state a Title VII claim for retaliation.

## IV.    Intentional Infliction of Emotional Distress

Booth also alleges that Schacherer's conduct amounts to intentional infliction of emotional distress. To state an IIED claim under Maryland law, a plaintiff must show (1) intentional or reckless conduct; (2) that was extreme and outrageous; (3) the plaintiff suffered severe emotional distress; and (4) there was a causal connection between the conduct and the emotional distress. *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977).

The Complaint does not allege sufficient facts to meet the second element. A defendant is only liable for IIED if the conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 614 (quoting Restatement (Second) of Torts § 46 cmt. d (American Law Inst. 1965)). The workplace slights and harassment described by Booth, while no doubt upsetting, do not clear the high bar that Maryland courts set for IIED claims. *See Arabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462, 466 (D. Md. 2002) ("As inappropriate and

repulsive as workplace harassment is, such execrable behavior almost never rises to the level of outrageousness, and almost never results in such severely debilitating emotional trauma, as to reach the high threshold invariably applicable to a claim of intentional infliction of emotional distress under Maryland law."); *Beye v. Bureau of Nat'l Affairs*, 477 A.2d 1197, 1204–05 (Md. Ct. Spec. App. 1984) (holding that an IIED claim was inadequate as pleaded where the plaintiff alleged that his supervisors gave him poor performance ratings, threatened to fire him, harassed him, physically assaulted him, passed him over for promotion, and deceived him into resigning).

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss is GRANTED. All claims against the DHHS and Leggett, and Booth's disparate treatment claim arising from the 2008 proposed suspension, are dismissed with prejudice. The remainder of the Complaint is dismissed without prejudice. Any Motion for Leave to File an Amended Complaint must be filed within 21 days and should be filed only if Booth can plead facts necessary to correct the defects in his claims identified in this Memorandum Opinion and can establish that amendment would not be futile. A separate Order shall issue.

Date: May 11, 2016

THEODORE D. CHUANG
United States District Judge